IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:19cr292-SMD |
| | ) | |
| LEON TROY WILLIAMS | ) | |

## PLEA AGREEMENT

## I. BACKGROUND INFORMATION

### A.   Attorneys

Defense Attorney:                    Stephen Ganter

Assistant United States Attorney:    Ben Baxley

Special Litigation Counsel/DOJ:      Jared Fishman

Trial Attorney/DOJ:                  David Reese

### B.   Counts and Statute Charged

Counts 1-2:    18 U.S.C. § 242, Deprivation of Rights Under Color of Law

### C.   Counts Pleading Pursuant to Plea Agreement

Counts 1-2:    18 U.S.C. § 242

### D.   Statutory Penalties

Counts 1-2:    18 U.S.C. § 242

A term of imprisonment of not more than one year, a fine of not more than $1,000 or twice the value of the property involved in the transaction, whichever is greater, or both the fine and imprisonment; a term of supervised release of not more than one year; an assessment fee of $25; and an order of restitution.

### E.   Elements of the Offense

Counts 1-2:         18 U.S.C. § 242:

First:          The defendant acted under color of law;

Second:          The defendant deprived the victim of a right secured and protected by the
                 Constitution and laws of the United States; namely, the right to be free from cruel
                 and unusual punishment; and

Third:           The defendant acted willfully.

## II. INTRODUCTION

Ben Baxley, Assistant United States Attorney; David Reese, Trial Attorney of the Civil
Rights Division of the Department of Justice; and Stephen Ganter, attorney for the defendant, Leon
Troy Williams, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, with the
authorization of the defendant, submit this plea agreement. The terms are as follows.

## III. THE GOVERNMENT'S PROVISIONS

1.      Pursuant to Rule 11(c)(1)(A), the government agrees that it will not bring any
additional charges against the defendant for the conduct described in the Information.

2.      The government agrees to recommend that the sentences in this case run
concurrently with each other.

3.      The government acknowledges that the defendant assisted authorities in the
investigation and prosecution of the defendant's own misconduct by timely notifying the
government of the defendant's intention to enter a guilty plea, thereby permitting the government
to avoid preparing for trial and allowing the government and the Court to allocate resources
efficiently. Provided the defendant otherwise qualifies, and that the defendant does not, before the
date of the sentencing hearing, either personally or through the actions of the defense attorney on
behalf of the defendant, take any action inconsistent the acceptance of responsibility, the
government will move at or before the sentencing hearing for a further reduction of one level. See
U.S.S.G. § 3E1.1(b). Determination of whether the defendant met the defendant's obligations to

2

qualify for a reduction pursuant to § 3E1.1(b) is at the sole discretion of the government. Further, the government reserves the right to oppose the defendant's receiving a two-level reduction pursuant to § 3E1.1(a) should the government receive information indicating that, between the date of the plea hearing and the date of the sentencing hearing, the defendant, either personally or through the actions of the defense attorney on behalf of the defendant, has acted inconsistent with the acceptance of responsibility.

## IV. THE DEFENDANT'S PROVISIONS

4.      The defendant agrees to plead guilty to Counts 1 and 2 and to make factual admissions of guilt in open court. The defendant further agrees to waive any right the defendant may have to subsequently withdraw the guilty plea pursuant to Rule 11(d). The defendant also promises to refrain from taking any action inconsistent with the defendant's acceptance of responsibility for the offense to which the defendant is pleading guilty.

5.      Other than the recommendation to run the sentences concurrently, the defendant understands that the parties have no agreement regarding any sentence recommendation that the government may make, or any recommendations the government may make regarding the calculation of the defendant's advisory Guidelines range.

6.      The defendant understands that the defendant will be allowed to withdraw the guilty plea in the event that the Court does not accept any or all of the provisions set forth pursuant to Rule 11(c)(1)(A).

7.      The defendant agrees not to commit any other federal, state, or local offense while awaiting sentencing, regardless of whether that offense is charged or chargeable. The defendant agrees to provide truthful information to Probation and to the Court in all presentence and

3

sentencing proceedings.

8.     The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of the Court. The defendant acknowledges that the full fine and restitution amounts shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of Probation at any time, the defendant agrees that the United States Bureau of Prisons and Probation will have the authority to establish payment schedules to ensure payment of the fine and restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off from federal payments, execution on non-exempt property, and any other means the government deems appropriate. The defendant also agrees that the defendant may be contacted by government officials regarding the collection of any financial obligation imposed by the Court without notifying the defendant's attorney and outside the presence of the defendant's attorney.

9.     To facilitate the collection of financial obligations imposed in this case, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Further, the defendant will, if requested by the government, promptly submit a completed financial statement to the Office of the United States Attorney for the Middle District of Alabama in a form the government provides and as the government directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful. The defendant expressly authorizes the government to obtain a report on the defendant's credit in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

10.     The defendant certifies that the defendant has made no transfer of assets in

4

contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by this agreement or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

11.     The defendant agrees to pay the $50 assessment fee on the date of sentencing.

12.     The defendant agrees to waive and hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, but not limited to, any records that may be sought under the Freedom of Information Act, see 5 U.S.C. § 552, or the Privacy Act of 1974, see 5 U.S.C. § 552a.

## V. FACTUAL BASIS

13.     The defendant admits the allegations charged in the Information and understands that the nature of the charges to which the plea is offered involves proof as to Counts 1 and 2. Specifically, the defendant admits the following to be true and correct:

a.     On the morning of February 16, 2019, while working as a Correctional Officer for the Alabama Department of Corrections ("ADOC") at Elmore Correctional Facility ("ECF") in Elmore, Alabama, the defendant observed inmate victims C.R. and C.H. jump the fence at the visitation area of ECF and retrieve a packet of material the defendant believed to be contraband. The defendant apprehended C.R. and C.H. and brought them to the ECF shift office. Present in the shift office when the defendant brought C.R. and C.H. to the shift office were ADOC CO Bryanna Mosley, ADOC Correctional Sergeant Ulysses Oliver, and ADOC Correctional Lieutenant 1. The defendant told Sgt. Oliver, CO Mosley, and others that C.R. and C.H. jumped the fence at the visitation area of ECF and retrieved a packet of material the defendant believed to

5

be contraband. ADOC Correctional Lieutenant 1 handcuffed C.R. and C.H. behind their backs. Sgt. Oliver, the defendant, and CO Mosley went to the front gate area to view surveillance video of the incident.

        b.      After viewing the surveillance video, CO Mosley, the defendant, and Sgt. Oliver returned to the shift office. C.R. and C.H. were no longer in the shift office, but had been placed in the ECF observation room. The ECF observation room contains four beds and sits directly across from the ECF shift office, separated by a hallway approximately five feet across. The shift office door and the observation room door open into the hallway. Additionally, the ECF shift office has a window through which persons inside the shift office can see into the hallway.

        c.      At the shift office, Sgt. Oliver retrieved the key to the ECF observation room from ADOC Correctional Sergeant 1, who was sitting at a desk in the shift office. As the defendant watched from the shift office, Sgt. Oliver entered the observation room and found C.R. and C.H., who were sitting quietly on a bed in the observation room, and who still were handcuffed with their hands behind their backs. Neither were engaged in any kind of disruptive conduct. As the defendant watched through the doorway of the shift office, Sgt. Oliver pulled C.R. from the bed and brought C.R. out of the observation room and into the hallway. There was no legitimate law enforcement reason to remove either C.R. or C.H. from the observation room at that time.

        d.      While the defendant watched through the doorway of the shift office, Sgt. Oliver shoved C.R. against the shift office wall and knocked C.R. to the floor. Sgt. Oliver then struck C.R. multiple times in the body with his fists and feet.

        e.      The defendant continued to watch as Sgt. Oliver struck C.R. about the body with a collapsible baton. While Sgt. Oliver was still striking C.R. with the baton, the defendant

6

walked from the shift office and stood in the doorway of the observation room. At no point during Sgt. Oliver's assault of C.R. did the defendant tell Lieutenant 1 or Sergeant 1 what was occurring in the hallway, and the defendant made no attempt to intervene to stop Sgt. Oliver from assaulting C.R., despite having the duty, opportunity and ability to do so through physical intervention, calling for assistance, or even shouting for Sgt. Oliver to cease the unlawful beating. Throughout the assault, C.R. was handcuffed behind his back, was not resisting nor engaged in any sort of disruptive conduct, and posed no threat.

f. After assaulting C.R., and as C.R. lay in the hallway, Sgt. Oliver re-entered the observation room and pulled victim C.H. into the hallway, moving past the defendant as the defendant stood in the doorway of the observation room. The defendant made no attempt to stop Sgt. Oliver. As the defendant and Lieutenant 1 watched from only a few feet away, Sgt. Oliver shoved C.H. against the shift office wall, repeatedly struck C.H. with his baton, and kicked C.H. At no point during Sgt. Oliver's assault of C.R. did the defendant tell Sergeant 1 what was occurring in the hallway, and the defendant made no attempt to intervene to stop Sgt. Oliver from assaulting C.R., despite having the duty, opportunity, and ability to do so through physical intervention, calling for assistance, or even shouting for Sgt. Oliver to cease the unlawful beating. Throughout the assault, C.H. was not resisting nor engaged in any sort of disruptive conduct, and posed no threat. At no point did Lieutenant 1 intervene in any way in the unlawful beating of C.H despite have the duty, opportunity, and ability to do so through physical intervention, calling for assistance, ordering the defendant or others to intervene, or even shouting for Sgt. Oliver to cease the unlawful beating. Instead, Lieutenant 1 said "It's fair" as he observed Sgt. Oliver assault C.H. The defendant chose not to intervene, in part because he took a cue from Lieutenant 1's failure to

7

intervene and Lieutenant 1's statement that the beating was "fair," assuming that Lieutenant 1's statement, and his failure to intervene in any way, indicated that Lieutenant 1 approved of the unlawful beating.

        g.      The defendant was present in the hallway, the observation room, and in the shift office during Sgt. Oliver's assault of C.R. and C.H. The defendant did not tell Sgt. Oliver to stop the assault of either C.R. or C.H.    The defendant did not report the assault to any ADOC personnel.

        h.      The defendant's failure to intervene with Sgt. Oliver to prevent Sgt. Oliver's assault of C.R. and C.H. was in contravention of ADOC policies and procedures governing the use of force and was not consistent with the defendant's training regarding use of force, in which the defendant was instructed as to his duty to intervene to prevent unjustified uses of force by other correctional personnel. The defendant failed to intervene and violated ADOC policies, in part, because he wished to curry favor with Lieutenant 1, who seemed to condone the beating through his own failure to intervene, despite Lieutenant 1 having the duty, opportunity, and ability to do so.

        i.      CO Mosley was present in the hallway and in the shift office during Sgt. Oliver's assault of C.R. and C.H. Despite having the duty, opportunity, and ability to do so, CO Mosley did not verbally or physically intervene with Sgt. Oliver, or seek the assistance of other officers, in order to prevent Sgt. Oliver from continuing to assault C.R. and C.H.

        j.      Lieutenant 1 was present in the hallway, in the shift office, and in the observation room during Sgt. Oliver's assault of C.R. and C.H. Lieutenant 1 did not tell Sgt. Oliver to stop the assault of either C.R. or C.H. Despite having the duty, opportunity, and ability to do

so, Lieutenant 1 did not verbally or physically intervene with Sgt. Oliver, or seek the assistance of other officers, in order to prevent Sgt. Oliver from continuing to assault C.R. and C.H.

              k.      Sergeant 1 was present in the shift office during Sgt. Oliver's assault of C.R. and C.H. Despite having the duty, opportunity, and ability to do so, Sergeant 1 did not verbally or physically intervene with Sgt. Oliver, or seek the assistance of other officers, in order to prevent Sgt. Oliver from continuing to assault C.R. and C.H.

              l.      Following the assault, the defendant wrote a false written statement concerning the assault. In his written statement, the defendant wrote "On February 16, 2019 I Officer Leon Williams was in the shift office when I heard Sgt. Oliver fussing at the inmates about jumping the fence. I then saw Sgt. Oliver strike the inmates with the Baton. I advised Sgt. Oliver to stop." However, the defendant had not advised Sgt. Oliver to stop. The defendant's written statement was in contravention of ADOC employee standards of conduct, which prohibit ADOC employees from providing false information.   The defendant wrote his false written statement for the purpose of hiding the fact of his failure, as well as the failures of his fellow officers, to intervene in the beatings when they had the opportunity to do so.

## VI. THE DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK

              14.      Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the conviction or sentence. The defendant further expressly waives the right to attack the conviction or sentence in any post-conviction proceeding, including proceedings pursuant to 28 U.S.C. § 2255. Exempt from this waiver is the right to appeal or collaterally attack the conviction or sentence on the grounds of ineffective assistance of counsel or

9

prosecutorial misconduct.

15.    In return for the above waiver by the defendant, the government does not waive its right to appeal any matter related to this case, as set forth at 18 U.S.C. § 3742(b). However, if the government decides to exercise its right to appeal, the defendant is released from the appeal waiver and may pursue any appeal pursuant to 18 U.S.C. § 3742(a).

## VII. BREACH OF THE PLEA AGREEMENT

16.    The parties agree that the issue of whether either party has breached this agreement at any time is one that will be resolved by the Court by a preponderance of the evidence, except as set forth in paragraph seven. The parties agree that, should either party obtain information causing the party to develop a good faith belief that the other party has breached this agreement, then the party will promptly file a written motion—or make an oral motion if doing so would be more expedient—asking that the Court declare the other party to be in breach of the plea agreement.

17.    The parties agree that, a breach of the plea agreement by the defendant would include, but not be limited to: (1) failing to fulfill each of the defendant's obligations under this plea agreement; (2) committing new criminal conduct; or (3) seeking to withdraw the guilty plea or otherwise engaging in conduct inconsistent with an acceptance of responsibility. Should the Court find the defendant to have breached this agreement: (1) the government will be free from its obligations under this agreement; (2) the defendant will not be permitted to withdraw the guilty plea; (3) the defendant's obligations and waivers under this agreement will remain in full force and effect; (4) the defendant will be subject to prosecution for other crimes; and (5) the government will be free to use against the defendant, directly and indirectly, in any criminal or civil proceeding, all statements by the defendant and any information or materials provided by the defendant,

10

including statements made during the plea hearing and all statements made by the defendant pursuant to proffer letters.

18. The parties agree that, in the event that the defendant breaches this agreement by committing new criminal conduct, the government will be required to only establish probable cause to believe that the defendant committed a new criminal offense for the Court to find the defendant in breach of the plea agreement.

19. The parties agree that, should the Court find the government in breach of this plea agreement, the defendant may cancel this agreement and thus be released from the appellate and collateral attack waivers. The parties further agree that a breach of the plea agreement by the government will not automatically entitle the defendant to withdraw the guilty plea and, if the defendant should seek to withdraw the guilty plea on the basis of such a breach, then the defendant will be required to file a motion pursuant to Rule 11(d).

## VIII. THE DEFENDANT'S ACKNOWLEDGEMENTS

20. The defendant understands that the Court is neither a party to nor bound by this agreement. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the Court will determine the advisory Guidelines range and the sentence. The defendant acknowledges that the defendant and the defendant's attorney have discussed the advisory Guidelines and the statutory sentencing factors set forth at 18 U.S.C. § 3553(a) and the defendant understands how those provisions may apply in this case. The defendant further understands that the defendant will have no right to withdraw a guilty plea on the basis that the Court calculates an advisory Guidelines range that differs from the range projected by the defense attorney or the government.

11

21.    The defendant acknowledges that the defendant authorized and consented to the negotiations between the government and the attorney for the defendant that led to this agreement.

22.    The defendant understands that: (1) in pleading guilty, the defendant may be required to make statements under oath; and (2) the government has a right to use against the defendant, in a prosecution for perjury or for making a false statement, any statement that the defendant makes. However, as the defendant understands, the government may not use as evidence against the defendant in any future proceeding involving the charges alleged in the Information or related offenses, the defendant's guilty plea if the Court permits the defendant to withdraw that guilty plea.

23.    The defendant understands that if the defendant pleads guilty pursuant to this agreement and the Court accepts that guilty plea, the defendant will waive certain rights, namely: (1) the right to plead not guilty or to persist in a plea of not guilty; (2) the right to a jury trial; (3) the right to be represented by counsel—and if necessary to have the Court appoint counsel—at trial and at every other stage of the proceeding; and (4) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

24.    The defendant understands: (1) the nature of each charge to which the defendant is pleading guilty; (2) the maximum and minimum penalties associated with each charge to which the defendant is pleading guilty, including imprisonment, fine, and a term of supervised release; (3) any applicable mandatory minimum penalty associated with a charge to which the defendant is pleading guilty; (4) any applicable forfeiture provision applicable to a charge to which the defendant is pleading guilty; (5) the Court's authority to order restitution; and (6) the Court's

12

obligation to impose a special assessment.

25.     The defendant confirms that the entirety of any agreement between the defendant and the government is as set forth in this agreement and any addendum to this agreement and that the government has not made any promises to the defendant other than those contained in this agreement and any addendum to this agreement. This agreement consists of 15 pages and 30 paragraphs and an addendum.

26.     The defendant confirms that counsel has competently and effectively represented the defendant throughout the proceedings leading to the entry of a guilty plea. The defendant is satisfied with such representation.

27.     The defendant enters this plea agreement and pleads guilty freely and voluntarily. That is, the defendant acts without being influenced by any threats, force, intimidation, or coercion of any kind.

28.     The defendant understands that this agreement binds only the Office of the United States Attorney for the Middle District of Alabama and that the agreement does not bind any other component of the United States Department of Justice, nor does it bind any state or local prosecuting authority.

## IX. THE ATTORNEYS' ACKNOWLEDGEMENTS

29.     The attorneys for the government and for the defendant acknowledge that this plea agreement contains the entirety of any agreement between the parties and that the parties reached this plea agreement in accordance with the procedure set forth at Rule 11.

30.     The attorney for the defendant confirms that the attorney for the defendant advised the defendant of: (1) the nature of the charges to which the defendant is pleading guilty; (2) the

penalties associated with those charges; (3) the rights that the defendant is waiving by pleading guilty; and (4) the possibility that statements made by the defendant under oath during a plea hearing may be used against the defendant in a subsequent prosecution for perjury or for making a false statement.

This **31st** day of **July**, 2019.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
UNITED STATES ATTORNEY

Verne H. Speirs
Criminal Chief

Ben Baxley
Assistant United States Attorney

David Reese
Trial Attorney
Civil Rights Division

Stephen Ganter
Attorney for the Defendant

I have read the foregoing Plea Agreement and understand it, and it correctly states the representations that have been made to me and accurately sets forth the conditions of the plea agreement that has been reached.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPHS ARE TRUE AND CORRECT.

14

Leon Troy Williams
Defendant

15